598 S.E.2d 725

The STATE, Respondent,

v.

Damico S. FLOWERS, Appellant.

No. 3828.

Court of Appeals of South Carolina.

Submitted March 19, 2004.

Decided June 21, 2004.

2

Assistant Appellate Defender Aileen P. Clare, Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor Ralph E. Hoisington, of Charleston, for Respondent.

HOWARD, J.:

Damico S. Flowers appeals his convictions for trafficking in cocaine; possession with intent to distribute cocaine near a school, park or playground; trafficking in crack cocaine; possession with intent to distribute crack cocaine near a school, park or playground; possession of marijuana with intent to distribute; possession of marijuana near a school, park or playground; possession of a pistol by a person under twenty-one years of age; and possession of a pistol during the commission of a violent crime. He argues the circuit court erred by admitting evidence obtained pursuant to a warrantless search of his girlfriend's residence, when he had previously denied officers' request to enter the residence. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

On August 14, 2001, Officer Phillip Kirkland and Sergeant Delmar Johnson went to 1918 Graham Street to investigate a complaint of drug activity and shots being fired in the yard. The officers knocked on the door and identified themselves as police. A male voice from inside the home told the officers to come in. As they stepped into the entryway of the home,

---

1. Because oral argument would not aid the court in resolving any issue on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

Flowers jumped up and told the officers to step back outside onto the porch. The officers complied and Flowers followed them out, closing the door behind him. Flowers told the officers he did not own the residence but the owner would be returning soon.

Shortly thereafter, the owner of the residence, Latonya Simmons, arrived in her vehicle. Sergeant Johnson approached Simmons while Officer Kirkland remained with Flowers. According to Sergeant Johnson, he asked Simmons if any drugs were in the residence, and she indicated there were. Sergeant Johnson then asked Simmons if he could search the house. With Simmons' consent, Sergeant Johnson and Simmons entered the residence.

Inside the home, Sergeant Johnson saw bags of marijuana and crack cocaine lying on a speaker in plain view. Additionally, he saw a gun lying on a nearby table. Both Simmons and Flowers were taken into custody. Simmons then signed a consent to search form. A further search of the residence revealed more illegal drugs. Subsequently, Flowers confessed that all of the contraband belonged to him.

At trial, Flowers moved to suppress the drug evidence, arguing it was obtained pursuant to a warrantless search of his girlfriend's residence over his objections. Flowers claimed he had a reasonable expectation of privacy in the residence, requiring the officers to heed his refusal to allow a search, notwithstanding Simmons' later consent. The circuit court denied the motion, finding although Flowers had a reasonable expectation of privacy in the residence, his statements to the police indicating he did not own the house and the owner would return shortly limited his authority to the time until the owner returned. The circuit court found Flowers did not have standing to challenge Simmons' consent to search the residence.

## LAW/ANALYSIS

Flowers argues the circuit court erred by admitting evidence obtained pursuant to a warrantless search of his girl-

friend's residence, when he had previously denied officers' request to enter the residence.[2]

■ "[T]he appellate standard of review in Fourth Amendment search and seizure cases is limited to determining whether any evidence supports the trial court's finding and the appellate court may only reverse where there is clear error." *State v. Green,* 341 S.C. 214, 219 n. 3, 532 S.E.2d 896, 898 n. 3 (Ct.App.2000) (citing *State v. Brockman,* 339 S.C. 57, 528 S.E.2d 661 (2000)).

■ Evidence obtained as a result of an unlawful search constitutes a violation of the Fourth Amendment and is inadmissible at trial. *State v. Nelson,* 336 S.C. 186, 192 n. 3, 519 S.E.2d 786, 789 n. 3 (1999). When a defendant has a reasonable expectation of privacy in the property being searched, Fourth Amendment rights apply to the search. *Minnesota v. Olson,* 495 U.S. 91, 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). A reasonable expectation of privacy exists when the defendant has a relationship with the property or property owner. *State v. Missouri,* 352 S.C. 121, 129, 572 S.E.2d 467, 470–471 (Ct.App.2002). Although a person present only intermittently or for a purely commercial purpose does not have a reasonable expectation of privacy, an overnight guest may have a reasonable expectation of privacy in the host's property. *Olson,* 495 U.S. at 98–99, 110 S.Ct. 1684.

■■ Third party consent may be given by one who has common authority over or some other sufficient relationship to the premises or effects being searched. *State v. Moultrie,* 271 S.C. 526, 528, 248 S.E.2d 486, 487 (1978) (citing *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). Common authority does not require common ownership, but merely " 'mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable' for the searching officers to believe that the person granting consent had the authority to do so." *Moultrie,* 271 S.C. at 528, 248 S.E.2d at 487 (quoting *Matlock,* 415 U.S. at 171 n. 7). However, a homeowner may grant consent

---

2. Initially, we note Flowers does not contend this is a landlord-tenant relationship. Nor does he claim to have exclusive control over any portion of the residence.

to search the premises on which a criminal defendant resides if the homeowner possesses common authority over or sufficient relationship to the premises or effects to be inspected. *State v. Pressley*, 288 S.C. 128, 130, 341 S.E.2d 626, 627 (1986).

The circuit court found Flowers had a legitimate expectation of privacy in Simmons' residence. Flowers and Simmons both testified Flowers spent approximately five nights a week at Simmons' home, kept a change of clothing there, and occasionally paid the rent. This evidence is sufficient to conclude that Flowers and Simmons had common authority over the residence, and to support the circuit court's finding that Flowers had a reasonable expectation of privacy in Simmons' residence.

Flowers argues because he had previously denied the officers' request to search, Simmons did not have authority to subsequently consent to a search. However, Flowers provides no authority for the proposition that a guest's refusal to consent to a search deprives a homeowner of the right to subsequently grant consent. To the contrary, a homeowner does not relinquish control over the premises to a third party simply because the third party occasionally resides in the home. *Pressley*, 288 S.C. at 130, 341 S.E.2d at 627; *see also State v. Vaster*, 24 Wash.App. 405, 601 P.2d 1292, 1294–95 (1979) (holding where a guest does not maintain exclusive control over any portion of the residence, even if the guest has a legitimate expectation of privacy, a homeowner's power to consent to a search of his own home overrides the objection of a guest to a search).

## CONCLUSION

As evidence exists to support the circuit court's denial of the motion to suppress, Flowers convictions are

**AFFIRMED.**

GOOLSBY and BEATTY, JJ., concur.